AO (Rev. 5/85) Criminal Complaint

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.

WILFREDO FREDERICK DARIA

**CRIMINAL COMPLAINT**

Case No. 3:20-mj-1174-JBT

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about January 16, 2020, in Duval County, in the Middle District of Florida, the defendant,

> an alien against whom a final order of removal from the United States was outstanding by reason of his being a member of the classes of aliens described in Title 8, United States Code, Section 1227(a)(2)(A)(ii) and (a)(2)(A)(iii), did willfully take action designed to prevent and hamper and with the purpose of preventing and hampering his departure pursuant to the final order of removal,

in violation of Title 8, United States Code, Section 1253(a)(1)(C). I further state that I am a Deportation Officer for the Department of Homeland Security, Immigration and Customs Enforcement, and that this Complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

Signature of Complainant
Brian M. Rothermel

Sworn to before me over the telephone and signed by me pursuant to Fed.R.Crim. P. 4.1 and 4(d)

on April 29, 2020                                    at   Jacksonville, Florida

JOEL B. TOOMEY
United States Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

## CRIMINAL COMPLAINT AFFIDAVIT

I, Brian M. Rothermel, being a duly sworn and appointed Deportation Officer for the Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), hereby make the following statement in support of the attached criminal complaint.

1. I have been a Deportation Officer for ICE for over seven years. Before becoming a Deportation Officer, I served as an Immigration Enforcement Agent for over four years. I have training and experience in the enforcement of the immigration and nationality laws of the United States. In addition, I have training and experience in the preparation, presentation, and service of criminal complaints and arrest warrants.

2. One of my duties as a Deportation Officer is to locate and apprehend aliens in the United States against whom a final order of removal has been entered. For approximately the last eight years, I have been attempting to locate and apprehend WILFREDO FREDERICK DARIA, a citizen of the Philippines against whom an order of removal was entered on September 8, 2009.

3. I learned the facts set forth below regarding DARIA's immigration history from reviewing his Alien Registration file, or A-file. An A-file is a central file maintained by immigration agencies that contains documents related to the interactions and encounters of United States immigration authorities with an

alien. All documents regarding the alien are maintained in the A-file regardless of the immigration officer who originated the documents or the location at which they were originated.

4.  DARIA was admitted into the United States on January 15, 1975, as a legal permanent resident. On August 30, 1991, DARIA was convicted in the Circuit Court, Fourth Judicial Circuit, Duval County, Florida, for the felony offense of sexual battery, in violation of Fla. Stat. § 794.011(3), in Case No. 16-1991-CF-9755. On August 7, 2007, DARIA was convicted in the same court for the felony offense of unemployment compensation fraud, in violation of Fla. Stat. § 443.071(1), in Case No. 16-2006-CF-6312.

5.  On August 13, 2008, DARIA was administratively arrested and served with a Notice to Appear at an immigration hearing. He was then transferred into the custody of the Jacksonville Sheriff's Office ("JSO") on December 15, 2008, to face outstanding criminal charges. Although ICE lodged a detainer with JSO, DARIA was inadvertently released on December 31, 2008. On January 16, 2009, ICE officers located and administratively arrested DARIA at his residence. DARIA was released on the same date, with instructions to report in person to the Jacksonville ICE office. On May 14, 2009, DARIA reported to the ICE office as directed. During this appointment, the information in his file was updated and he was instructed to return on September 17, 2009.

However, DARIA failed to report for this scheduled appointment and never provided ICE with any justification for his failure to report.

6. DARIA's release on January 16, 2009, was pursuant to an Order of Release on Recognizance, a copy of which was provided to DARIA. Among other conditions, the order required DARIA to "report for any hearing or interview as directed by Immigration and Customs Enforcement or the Executive Office for Immigration Review," "surrender for removal from the United States if so ordered," and "not change [his] place of residence without first securing written permission from" an ICE officer.

7. Through the Notice to Appear issued on August 13, 2008, DARIA was notified that he was subject to removal under (among other provisions) (1) Section 237(a)(2)(A)(ii) of the Immigration and Nationality Act ("INA") (codified at 8 U.S.C. § 1227(a)(2)(A)(ii)), which provides that an alien is removable if "at any time after admission [the alien] is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial, . . ." and (2) Section 237(a)(2)(A)(iii) of the INA (codified at 8 U.S.C. § 1227(a)(2)(A)(iii)), which provides that an alien is removable if the alien "is convicted of an aggravated felony at any time after admission . . . ." Sexual battery is an aggravated felony (see 8 U.S.C.

3

§ 1101(a)(43)(A)) and both sexual battery and unemployment compensation fraud are crimes of moral turpitude.

8.  At an administrative immigration hearing on September 8, 2009, DARIA conceded that he was removable under the two sections cited in the Notice to Appear but sought waiver or cancellation of removal. In an order issued on the same date, the immigration judge denied DARIA's request and ordered his removal to the Philippines. DARIA appealed the judge's order to the Board of Immigration Appeals ("BIA") and in a decision and order entered on September 29, 2010, the BIA dismissed the appeal. DARIA then petitioned the Eleventh Circuit Court of Appeals for review of the BIA's order and on August 12, 2011, the court denied the petition. See Daria v. U.S. Atty. Gen., No. 10-14963, 437 Fed. Appx. 824 (11th Cir. 2011). DARIA did not seek further review and thus the order of removal became final.

9.  On September 12, 2011, ICE sent a letter to the address in Jacksonville provided by DARIA in which it noted the Eleventh Circuit's decision affirming the order of removal and directed him to report to the ICE office in Jacksonville on December 19, 2011, for removal to the Philippines. DARIA failed to report as directed, thus violating his Order of Release on Recognizance.

10. After DARIA failed to report as directed, ICE attempted to locate and administratively arrest him. In June, 2012, I and other ICE officers attempted to locate DARIA at his last known address in Jacksonville but were unsuccessful. We then attempted to locate him at his last known place of employment in Jacksonville. While at DARIA's last known place of employment, we spoke with the business owner who confirmed that DARIA was an employee and stated that DARIA was currently working out in the field. The business owner then called DARIA and his partner on the telephone, stating that the police were present and requesting that they return to the business. A short time later, DARIA's partner returned to the business alone and stated that after the phone conversation with the business owner, DARIA asked him to pull over at which time DARIA got out of the vehicle and stated that he could not go back to the business because the police were looking for him. We then attempted to contact DARIA by telephone and left several messages instructing him to report to the ICE office, but DARIA failed to do so. Further attempts to locate DARIA during this operation were similarly unsuccessful.

11. In further attempting to locate DARIA, I learned that he had an appointment on October 5, 2012, at 215 N. Market Street in Jacksonville regarding a pending criminal case. On October 5, 2012, officers went to that address and planned to arrest DARIA upon his arrival for the appointment.

5

While waiting for DARIA to arrive, officers observed DARIA's vehicle circling the building several times and then departing the area. Officers were later informed by investigators for the criminal case that DARIA had called to reschedule his appointment.

12. On January 16, 2020, I and other officers went to what was believed to be DARIA's then-current address in Jacksonville. We witnessed DARIA exit the residence and begin to get into a white Ford F-150 pick-up truck. As we approached the residence to administratively arrest DARIA, he fled on foot back into the residence and out the back door into woods behind the house. We established a perimeter search of the woods and surrounding area but were unsuccessful in locating DARIA.

13. On April 14, 2020, I returned to the residence and observed the white pick-up truck at the residence. After a short time at this location, I observed DARIA enter the pick-up truck and depart the residence with an elderly female matching the physical description of DARIA's mother. I then followed the vehicle for a short distance. However, ICE policies do not permit vehicle pursuit to administratively arrest an alien. In addition, given DARIA's history of evading arrest, I was concerned that an attempt to arrest him while he was driving the vehicle could cause him to flee at a high rate of speed and endanger bystanders.

Based upon the foregoing, your affiant believes there is probable cause to establish that WILFREDO FREDERICK DARIA, an alien against whom a final order of removal from the United States was outstanding by reason of his being a member of the classes of aliens described in Title 8, United States Code, Section 1227(a)(2)(A)(ii) and (a)(2)(A)(iii), did willfully take action designed to prevent and hamper and with the purpose of preventing and hampering his departure pursuant to the final order of removal, in violation of Title 8, United States Code, Section 1253(a)(1)(C).

_____
Brian M. Rothermel
Deportation Officer
Department of Homeland Security
Immigration and Customs Enforcement
Jacksonville, Florida

7